Argued January 9; decided March 4, 1895.

## STATE *v.* MALONEY.

[39 Pac. 398.]

PROVINCE OF JURY — FALSE OR CONFLICTING STATEMENTS MADE BY AN AC- CUSED concerning his acquisition and possession of stolen property do not, as a matter of law, tend to show unlawful possession; such statements are competent evidence, but their weight and value are entirely for the jury.*

APPEAL from Wasco: W. L. BRADSHAW, Judge.

The defendants Daniel Maloney and Charles Snelling were tried and convicted upon an indictment against them for the larceny of a horse, the property of one Michael Doyle, and from the judgment thereon bring this appeal. The evidence tended to show that the horse was stolen from the pasture of the owner, a few miles from The

* The matter of presumptions of law in criminal cases has been passed upon before by this court, and always in accordance with the rule above set forth. In *State* v. *Hale,* 12 Or. 352, it was held that the only presumption arising from the possession of recently stolen property is one of fact and not of law. Again, in *State* v. *Huffman,* 16 Or. 15, the question of the weight of evidence was fully considered at page 24, and the rule clearly laid down that the question for the court is the competency of the testimony, and its effect is for the jury : See also *Meyer* v. *Thompson,* 16 Or. 194. Late decisions sustaining the principal case are *Greutzinger* v. *State,* 48 N. W. 148; *State* v. *Humason,* 5 Wash. 499 (32 Pac. 111); *State* v. *Walters,* 7 Wash. 246 (34 Pac. 940); *People* v. *Etting* ( Cal.), 34 Pac. 237. — REPORTER.

Dalles, some time between Friday evening and Monday morning, and was found in the possession of the defendants on the following Wednesday evening. At the trial evidence on the part of the State was given showing that the defendant Maloney stated, in explanation of his possession of the property, that he bought it and another horse from an Indian on Monday morning between ten and eleven o'clock, giving in exchange therefor three ponies and ten dollars in money,—eight dollars of his own, and two dollars borrowed from his codefendant. An affidavit made by Maloney on his preliminary examination was also submitted in evidence, in which it is stated that he purchased the horse from an Indian, giving three ponies and eight dollars in money therefor. From this last statement the word "ten," as originally written, had been crossed out, and the word "eight" interlined, but the evidence was conflicting as to whether the change was made before or after the affidavit was filed. The State also called one Dufur as a witness, who testified that Maloney told him that he made the trade for the horse about noon, or a little after, on Monday, but the witness was not very certain as to the exact time. There was no evidence whatever that the defendant Snelling has made any statements, conflicting or otherwise, as to how he came into possession of the property, nor did the evidence show any statements by Maloney other than as detailed above: Upon this state of the testimony the court instructed the jury, at the request of the prosecution, that "If you find from the evidence that the defendants have made conflicting statements as to how they came into possession of the animal in question, this fact may be considered by you as tending to show that their possession was unlawful."

For appellant there was a brief by *Messrs. Dufur and Menefee,* and an oral argument by *Mr. E. B. Dufur.*

For the State there was a brief and an oral argument by *Mr. Geo. E. Chamberlain,* attorney-general.

Opinion by MR. CHIEF JUSTICE BEAN.

The foregoing instruction, it seems to us, was erroneous. The manifest effect of it, under the evidence, was that, though the defendant Maloney had made no contradictory statements as to the party from whom he received the property, or as to how he came into possession thereof, yet if at one time he said he paid therefor ten dollars, in addition to three ponies, and at another time only eight dollars, and at one time said he made the trade between ten and eleven o'clock in the morning, and at another time about noon, such statements would tend, as a matter of law, to show, not only that his possession was unlawful, but so likewise was the possession of his codefendant, who had made no statements whatever concerning the matter. False and contradictory statements by a defendant in explanation of his possession of stolen property are competent evidence against him, but the effect and value thereof, and what they tend to prove, is for the jury, not the court. The competency of such evidence is one thing, and what it shows or tends to show is another and quite a different thing. The former is a question for the court, and the latter exclusively for the jury. In this case any contradiction or discrepancy in the various statements made by Maloney as to how he acquired possession of the property was competent evidence to be weighed by the jury, along with all the other evidence in the case, in determining his guilt or innocence; but it was error in the court to instruct them that it tended to show guilt or unlawful possession. The inference, if any, to be drawn from such evidence, and the weight to be given to it, was for the jury, and the court could not by way of

instruction tell them that any particular inference was warranted from such testimony. False or contradictory statements do not as a matter of law tend to show guilt, but the inference or presumption to be drawn therefrom is one of fact for the jury. Where the law fixes the weight or effect of evidence, the court may declare it to the jury; but where the guilt of the defendant is sought to be proven, not directly by the facts shown, but by inferences therefrom, the court cannot select out a particular item of evidence and instruct the jury that it tends to prove or disprove the main fact, without invading the province of the jury, whose duty it is to give such facts or circumstances the weight they are entitled to in the light of all the evidence in the case. The instruction as given was, we think, error, and for this reason the case must be reversed and a new trial ordered.

There are numerous other assignments of error in the record, but the only one relied on for a reversal is the definition of a "reasonable doubt," which is perhaps subject to some verbal criticism. Whether, however, it contains reversible error is unnecessary to consider, in view of a new trial, and what was said about the better practice in such cases in *State* v. *Morey,* 25 Or. 255–7 (35 Pac. 655, 36 Pac. 573). Judgment reversed and new trial ordered.

                                        REVERSED.