Argued May 6, decided July 20, 1909.

## STATE *v.* OSBORNE.

[103 Pac. 62.]

CRIMINAL LAW—EXCLUSION OF PUBLIC FROM TRIAL—PRESUMPTIONS AS TO ENFORCEMENT OF ORDER AND PREJUDICE FROM ERROR.

1. In the absence of a showing to the contrary, it is presumed that an order excluding the public from the courtroom during a criminal trial was enforced, and that it was prejudicial to the rights of the defendant.

CRIMINAL LAW—TRIAL—EXCLUSION OF PUBLIC.

2. Under Section 11, Article I, Constitution of Oregon, declaring that, "in all criminal prosecutions the accused shall have the right to public trial," it was error for the court, in a prosecution for assault with intent to rape, to exclude from the courtroom all persons, except defendant, the attorneys engaged in the trial, the jury and officers of the court, and the witnesses while on the stand.

DISTRICT AND PROSECUTING ATTORNEYS—DUTIES OF PROSECUTING ATTORNEY.

3. It is as much the duty of prosecuting attorneys to see that a person on trial is not deprived of any of his constitutional or statutory rights as it is to prosecute him for the crime with which he is charged.

CRIMINAL LAW—TRIAL—STRIKING OUT OF EVIDENCE.

4. Hearsay evidence should be stricken out, though it was elicited on cross-examination by the parties objecting thereto.

CRIMINAL LAW—EVIDENCE—ACTS OF CODEFENDANT.

5. In a prosecution for an assault with intent to rape, the admission of evidence of a previous similar assault on the daughter of the prosecuting witness by a codefendant not on trial is reversible error.

WITNESSES—IMPEACHMENT—EVIDENCE.

6. After a witness has testified that the character of the prosecuting witness in a certain particular is bad, he will not be permitted on cross-examination to testify to specific acts or occupation of the prosecuting witness in rebuttal of such testimony.

54 OR.—— 10

CRIMINAL LAW—REVIEW OF APPEAL—HARMLESS ERROR.

7. A conviction will not be reversed for the giving of hearsay evidence which was not responsive to the questions asked, where the court instructed the jury not to consider it, and no prejudice therefrom appears.

CRIMINAL LAW—PRESUMPTION OF GUILT FROM FLIGHT.

8. The presumption of guilt arising from the flight of accused is one of fact, and not of law; and the question as to whether the circumstance tends to show a guilty intent is for the jury.

CRIMINAL LAW—FLIGHT AS EVIDENCE OF GUILT.

9. The flight of accused may be taken into consideration by the jury as a circumstance in connection with the other evidence in determining whether accused was guilty of the crime charged.

INSTRUCTIONS — DISCRETION OF COURT — REQUEST FOR — INCLUDED IN GENERAL CHARGE.

10. A court is not bound to give, and ought not to give, an instruction, even though it may state the law correctly, which is not couched in language sufficiently untechnical to be comprehended by the average juror, for by so doing the jury is confused rather than instructed.

From Malheur: GEÒRGE E. DAVIS, Judge.

The defendant, Heck Osborne, was indicted, tried and convicted of an assault with intent to commit rape. From a judgment sentencing him to the penitentiary for three years, he appeals.          REVERSED.

For appellant there was a brief and oral arguments by *Mr. William H. Brooke* and *Mr. Francis M. Saxton.*

For respondent there was a brief and oral arguments by *Mr. John W. McCulloch,* District Attorney, and *Mr. Andrew M. Crawford,* Attorney General.

MR. JUSTICE KING delivered the opinion of the court.

Heck Osborne and Sam Yarbrough were jointly indicted on a charge of assault with the intent to commit rape upon Etta Van Blearicom, a woman over sixteen years old. Yarbrough pleaded guilty, and was sentenced to the penitentiary. At a subsequent term of court Osborne was tried, convicted, and sentenced to three years' imprisonment, from which he appeals.

1. After the case was called for trial, and before the taking of any testimony, the district attorney requested that the public be excluded, stating: "If the court please, before beginning the taking of testimony in this case, I

would like to ask for an order of the court excluding the public from the trial. It has a good deal of dirty, vulgar language to be used, and we can probably get at it better to have a closed-door session." Defendant's counsel objected to this request, but the court overruled the objection, and directed the sheriff as follows: "You will please exclude everybody from the courtroom except the defendant, the attorneys engaged in the trial of this case, the jury, and officers of this court, and the witnesses while on the witness stand; and you will observe this order so to exclude the public from the courtroom during the taking of testimony upon this trial." The making of this order constitutes the first prejudicial error assigned. It will be observed from the language of the court that the public was intended to be excluded. Whether this order was carried into effect the bill of exceptions does not disclose; but, in the absence of some showing therein to the contrary, it must be presumed that the order was enforced, and, if erroneous, that it was prejudicial to the rights of the defendant: *Inverarity* v. *Stowell,* 10 Or. 261; *Du Bois* v. *Perkins,* 21 Or. 189 (27 Pac. 1044); *Nickum* v. *Gaston,* 24 Or. 380 (33 Pac. 671: 35 Pac. 31); *State* v. *Morey,* 25 Or. 241 (35 Pac. 655: 36 Pac. 573); *Carney* v. *Duniway,* 35 Or. 131 (51 Pac. 192: 58 Pac. 105); *Carter* v. *Wakeman,* 45 Or. 247 (78 Pac. 362); *State* v. *Reed,* 52 Or. 377 (97 Pac. 627).

2. It is argued that the procedure complained of is in violation of the plain provisions of both our national and state constitutions. Upon this subject the Constitution of the United States (Amendment 6) provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining

witnesses in his favor; and to have the assistance of counsel for his defense." It seems to have been held that, so far as this provision of the national Constitution is concerned, it was not intended to limit the powers of the states in respect to their own people, but to operate on the national government only: *Spies* v. *Illinois,* 123 U. S. 131 (8 Sup. Ct. 22: 31 L. Ed. 80) ; *In re Sawyer,* 124 U. S. 201 (8 Sup. Ct. 482: 31 L. Ed. 402) ; *Brown* v. *New Jersey,* 175 U. S. 174 (20 Sup. Ct. 77: 44 L. Ed. 119). But, whatever the rule on that subject may be with reference to the national organic law on the subject, the constitution of our state is to the same effect: See Section 11, Article I, Constitution of Oregon. The courts have uniformly held not only that constitutional guaranties of an accused on trial for a felony cannot be set aside by the courts, but that they cannot be waived: *Hopt* v. *Utah,* 110 U. S. 574, 579 (4. Sup. Ct. 202: 28 L. Ed. 262) ; *Crain* v. *United States,* 162 U. S. 625 (16 Sup. Ct. 952: 40 L. Ed. 1097). To the effect that this rule with but few exceptions applies with equal force to statutory guaranties under such circumstances, see *State* v. *Walton,* 50 Or. 142 (91 Pac. 490: 13 L. R. A. (N. S.) 811) ; *State* v. *Walton,* 51 Or. 574 (91 Pac. 495), and numerous authorities there cited.

There can be no question as to the right of a court to exercise much discretion in excluding in rare instances a part of the public, such for example, as hysterical persons, or those who may be inclined to disturb the orderly progress of the trial, or the young during a class of trials that shock the sense of decency or degrade the public morals. Also, for obvious reasons, it has been held that a trial court may regulate the indiscriminate admission of persons of a known class who might by their conduct tend to embarrass the witness, or interfere with the due and orderly progress of the trial. Extreme cases have also arisen where it has been found necessary to exclude the greater part of the spectators. Of this class are the

cases of *People* v. *Kerrigan*, 73 Cal. 222 (14 Pac. 849), and *Grimmett* v. *State*, 22 Tex. App. 36 (2 S. W. 631: 58 Am. St. Rep. 630). In the latter case the trial was for rape where the witness under examination was a girl fourteen years old. Numerous persons throughout the audience persisted in laughing and in otherwise disturbing the proceedings, whereupon it was deemed necessary temporarily to clear the room in order to quiet such disturbance. In *People* v. *Kerrigan* the court excluded all except the officers, those concerned in the trial, and friends of the defendant, which action was upheld on appeal, but in *People* v. *Hartman*, 103 Cal. 242 (37 Pac. 153: 42 Am. St. Rep. 108), this holding was impliedly overruled. The procedure in the Kerrigan and Grimmett cases was approved on appeal only because the record did not show that the defendant's rights were prejudiced thereby; the appellate court holding that the burden was upon the defendant to show injury by reason of having been deprived of a public trial. On this subject, in *People* v. *Hartman*, 103 Cal. 245 (37 Pac. 154: 42 Am. St. Rep. 108), the court observes: "These intimations cannot be indorsed. The defendant charged with crime is entitled to certain rights under the constitution, and, when he has been deprived of any one of them, he has not had that fair and impartial trial to which he is entitled, however bad and degraded." In *People* v. *Hall*, 51 App. Div. 57 (64 N. Y. Supp. 433) ; *State* v. *Callahan*, 100 Minn. 63 (110 N. W. 342) and *Benedict* v. *People*, 23 Colo. 127 (46 Pac. 637), the courts appear to recognize the practice followed in the Kerrigan and Grimmett cases; but whatever may be the reasons assigned for the concusions announced, or the distinctions attempted between those cases and the great weight of authority, the rule there applied can have no application in this state: *Carter* v. *Wakeman*, 45 Or. 427, 430 (78 Pac. 362). In *People* v. *Murray*, 89 Mich. 276, 290 (50 N. W. 995: 14 L. R. A. 809: 28 Am. St. Rep. 294), the court in dis-

tinguishing the case of *People* v. *Kerrigan* from the one under consideration says: "Neither is this case an authority for what was done in Murray's case. The court did not order the courtroom to be cleared of spectators, but the lobby outside. There is nothing in the facts of that case which assimilates in any degree to the trial of Murray. Here no violence is shown, no disorderly conduct, no violent or disgraceful action on the part of Murray, which tended to lessen the dignity of the court, or bring the administration of justice into disrepute. I cannot accede to the correctness of the proposition intimated in that case that, if a public trial has not been accorded to the accused, the burden is upon him to show that actual injury has been suffered by a deprivation of his constitutional right. On the contrary, when he shows that his constitutional right has been violated, the law conclusively presumes that he has suffered an actual injury. I go further, and say that the whole body politic suffers an actual injury when a constitutional safeguard erected to protect the rights of citizens has been violated in the person of the humblest or meanest citizen of the state. The constitution does not stop to inquire of what the person has been accused or what crime he has perpetrated, but it accords to all without question, a fair, impartial, and public trial. * * Who is to decide who are the friends of the accused? The law makes no such test, but allows all citizens freely to attend upon any trial, whether civil or criminal." After the appellate court had held that the public must not be excluded, the legislature of Michigan passed an act permitting trial courts in certain cases to exclude the public, but in *People* v. *Yeager,* 113 Mich. 228 (71 N. W. 491), this legislative enactment was held unconstitutional.

3. The cogent reasons above given for not requiring the defendant on appeal to show that he was actually prejudiced on account of the court's invasion of his constitutional rights may be further supplemented. The

very fact that a defendant is tried in the absence of the public, or, in other words, that the trial was secret, might in many instances deprive him of the power of showing that he has not had a fair trial. This in itself might result in the affirmance of a judgment of conviction which may have been secured in an unjust and illegal manner. With an audience present it is always within the power of the accused or of his counsel to call upon the persons present to witness unbecoming language or conduct of counsel, or of the court, or of others connected with the trial, of which privilege he would be precluded in the absence of such an audience. It often happens that disputes arise between the court and counsel, such, for instance, as where the court refuses to recognize exceptions taken, whereupon it becomes necessary that bystanders be called upon to evidence what occurred— and this under our present system where secret trials are practically unknown: Section 170, B. & C. Comp. How much more, then, would be the occasion—and we might add the inducements—for incidents of this kind to occur if, by the establishment of the precedent which an affirmance of this case would necessitate, the constitutional guaranties of public trial should become obsolete, and trial courts be permitted at their will to exclude the public. It will not do to say that courts are impartial, and that both the courts and district attorneys are there to protect the accused from wrong as well as to convict the guilty. The law is intended not only for protection against the acts of those who knowingly or intentionally err, but against those as well who do wrong unintentionally, or from an erroneous sense of duty. As stated by the Supreme Court of Michigan in *People* v. *Murray*, 89 Mich. 276, 286 (50 N. W. 995, 998: 14 L. R. A. 809: 28 Am. St. Rep. 294) : "It is for the protection of all persons accused of crime—the innocently accused, that they may not become the victim of an unjust prosecution, as well as the guilty, that they may be awarded a fair

trial—that one rule must be observed and applied to all."
Courts as a rule are just, and seldom do wrong inten-
tionally, but it must be remembered that the members
thereof are human, and accordingly likely to err.  It is
as much the duty of prosecuting attorneys to see that a
person on trial is not deprived of any of his statutory or
constitutional rights as it is to prosecute him for the
crime with which he may be charged, but it is a matter
of common knowledge, and every practitioner at the bar
will bear witness that the district attorney who fully
appreciates and practices this self-evident duty is a rare
exception rather than the rule.  In practice he is usually
as enthusiastic to add one more conviction to his string of
legal conquests as the counsel for defense may be to clear
his client; and equally in such instances, in the extremes
followed, do we, as a rule, observe no difference between
the methods adopted by the prosecution and those of
counsel defending.  In the early history of the law, when
the accused was not permitted to say anything in his own
defense, or to be represented by counsel, the public prose-
cutor as well as the courts, it would seem, should have
fully appreciated their duties in this respect; but the
flagrant abuses extant in England, as well as in this
country, prior to our Revolution, impressed upon the
founders of our national and state governments the
importance of providing against them by inserting in
our fundamental laws the express provision that every
person charged with crime shall have a public trial.  The
language used for this purpose is specific, clear, and free
from any possible misunderstanding.  In the face of the
adoption of these explicit provisions on the subject, it
would be an anomaly upon judicial interpretation to
establish a precedent the logical sequence of which when
judged by past events would soon result in undermining
and annulling the constitutional guaranties so carefully
guarded and provided for by the founders of our national
and state governments.  It needs but a moment's reflec-

tion to be able to conceive of many ways in which a prisoner deprived of the presence of the public might be injured. In the first place, the mere declaration that the public shall be excluded tends to impress the jury with the enormity of the offense for which the accused is to be tried, carrying with it, to some extent at least, prejudice against the person so charged. It is not an unusual occurrence that some person in an audience attending a trial will upon hearing a narrative of the incidents connected with the crime charged, recall facts to which he will call attention, and thus aid in establishing the innocence of the accused. Were the public excluded, however, such aid would not be available, and the conviction of the innocent might result. Again, the presence of friends of the accused often serves to impress the jury favorably, and to that extent, at least, counteract the prejudice usually incident to being accused of an offense which the court may think the public should not hear. It cannot, therefore, be said that the court at all times may exclude any particular class. Its regulations in this respect must be reasonable and be governed by the surrounding circumstances. If a woman is on trial, or constitutes one of the principal witnesses, it may be important that persons of her own sex should be present. If a child is to testify, occasions may arise when the playmates and friends of similar age to such witness should be present to enable the court and jury to elicit from that witness the testimony to which the defense or prosecution is entitled.

In referring to a trial identical, so far as procedure is concerned, with the one here under consideration, Mr. Justice Garoutte, in *People* v. *Hartman,* 103 Cal. 243 (37 Pac. 154: 42 Am. St. Rep. 108), observed: "This was a novel procedure, and has no justification in the law of modern times. We know of no case decided in this country supporting the course of procedure here pursued. It is in direct violation of that provision of the constitu-

tion which says that a party accused of crime has a right
to a public trial. The fact that the officers of the court
were allowed to be present in no way made the trial pub-
lic. For the purposes contemplated by the provision of
the constitution the presence of the officers of the court,
men who, it is safe to say, were under the influence of
the court, made the trial no more public than if they too
had been excluded. While a right to the public trial con-
templated by the constitution does not require of courts
unreasonable and impossible things, as that all persons
have an absolute right to be present and witness the
court's proceeding, regardless of the conveniences of the
court and the due and orderly conduct of the trial, yet
this provision must have a fair and reasonable construc-
tion in the interest of the person accused. Judge Cooley,
in his work upon Constitutional Limitations, p. 383, has
well declared the true rule in the following language:
"The requirement of a public trial is for the benefit of
the accused, that the public may see that he is fairly
dealt with and not unjustly condemned, and that the
presence of interested spectators may keep his triers
keenly alive to a sense of their responsibility, and to the
importance of their functions; and the requirement is
fairly observed if, without partiality or favoritism, a
reasonable proportion of the public is suffered to attend,
notwithstanding that those persons whose presence could
be of no service to the accused, and who could only be
drawn hither by a prurient curiosity, are excluded alto-
gether.'" To the same effect: 40 Cent. Law J. 7;
Bishop's Criminal Procedure, § 957; *Hill* v. *People,* 16
Mich. 351; *Williamson* v. *Lacy,* 86 Me. 80 (29 Atl. 943:
25 L. R. A. 506); *State* v. *Hensley,* 75 Ohio St. 255 (79
N. E. 462: 9 L. R. A. (N. S.) 277: 116 Am. St. Rep. 734).
In *Williamson* v. *Lacy,* Mr. Chief Justice PETERS, in con-
sidering the effect of excluding the public from trials,
remarks: "History brings to us too vivid pictures of the
oppressions endured by our English ancestors at the

hands of arbitrary courts ever to satisfy the people of this country with courts whose doors are closed against them. They instinctively believe that it is their right to witness judicial trials and proceedings in the courts. It is true that courts have discretionary powers to be exercised in such a matter—but not an unlimited discretion. The almost boundless authority exercised by the court of Star Chamber in England was the seed of its own destruction, and was its historical infamy. Its lessons are not lost on the courts of today. We never knew of any court of general jurisdiction in this state conducting a strictly private criminal trial, nor, before this, of such a trial before a common magistrate." We do not doubt but that in the case before us the court as well as the district attorney acted with the best of motives, having in view that the trial would move along more agreeably without the presence of spectators, and with equally as much fairness to all concerned as with them, and that in anticipation of the language usually incident to such cases the public would fare better outside of the courtroom than if present; but whatever may have been the purpose, whether out of respect for the public in this particular case, or whether for the purpose, as suggested by the language used by the state's counsel in his request, that with a closed-door session "we can get at it better," or otherwise, it must be conclusively presumed by this innovation to be prejudicial to appellant's rights, by reason of which a reversal becomes necessary.

4. In view of a new trial, a determination of other points presented becomes important. John H. Howard, a justice of the peace and a witness for the state, on cross-examination testified as to the time the appellant returned, and was asked:

"He didn't tell you that, did he?"
"A. Oh, no."
"Q. That is your opinion about it?"
"A. Yes; and I don't know as it would do any good for me to tell this, but a man working up in the field

right above town there, and he told him to come in and make a good talk to me, and I would let him go."

"Q. How did you know this man told him that?"

"A. Well, the man told me he did."

Defendant's counsel then moved that this testimony be stricken out as hearsay, which was denied; the court observing: "You are bringing that out." This ruling is assigned as error. That this was hearsay testimony is not open to question; the point involved in reference thereto being whether the defendant was entitled under the circumstances under which the answers were elicited to have this hearsay testimony taken from the jury. The testimony elicited on cross-examination is the evidence of the adverse party: *Ah Doon* v. *Smith,* 25 Or. 89, 93 (34 Pac. 1093). The questions asked the witness were clearly within the defendant's rights, and that the hearsay responses were elicited on cross-examination forms no exception to the rule in this respect. The witness was not interrogated in such a manner as to require him to give hearsay testimony further than, if it should develop that his information was acquired in that manner, defendant's counsel would be apprised of that fact, and to this information they were certainly entitled. It would be a novel procedure which, after a witness has testified that he knows a fact, would preclude the counsel from ascertaining the source of his information without the danger of being compelled to admit testimony that is hearsay, and accordingly incompetent, merely because elicited on cross-examination. We know of no authority for this practice. The motion to take from the jury the testimony complained of should have been granted.

5. Evidence was offered tending to show that at the time the assault charged was committed Yarbrough, in company with appellant, was visiting the home of the prosecuting witness, and at that time Elsie Van Blearicom, a daughter of the prosecuting witness, was in an adjoining bedroom. Elsie was then called, and over

defendant's objection testified that on the night before, she was assaulted in a similar manner by the co-defendant, Yarbrough, who was not then on trial, but had previously pleaded guilty to the charge under consideration, and that as a result of the assault she had marks on her throat and neck on the following day. Nothing appears in the record which would in any way show this testimony to be relevant or competent. It had no bearing whatever upon the crime for which either of the defendants was charged further than that it might affect Yarbrough if he were on trial. Certainly Osborne could not be held for the acts of his co-defendant on some previous occasion in what might constitute a separate and distinct crime which was in no manner connected with the one before the court. This testimony should have been excluded. Its admission constitutes reversible error.

6. The next error complained of relates to the cross-examination of Frank Cummings. On direct examination he testified as to his residence; that he was acquainted with the general reputation of the prosecuting witness for virtue and chastity in the vicinity in which she lived, and that it was not good. On cross-examination by the state he was asked if he knew anything personal against her reputation, and if he ever saw "any suspicious circumstances or anything outside of talk" which he had heard to convince him that her reputation was not good, which he answered in the negative. The witness was then interrogated concerning her occupation, as to whether he knew she was washing at a hotel, and if she appeared to be a hard-working woman, to all of which questions answers were made over defendant's objection as being incompetent, immaterial, irrelevant, and not proper cross-examination. Some authorities appear to hold that a person testifying as to character may be questioned concerning the specific acts and habits of wrongdoing on the part of such a person. The weight

of authority, however, is to the contrary. See 3 Enc. Ev. 49, and authorities collated pro and con on the subject; also Wigmore, Ev. § 988, where this rule is severely criticised. While this practice has been permitted in some jurisdictions, we know of no authority or of any just reason for a rule which after a witness has testified that the character of another in a certain particular is bad permits specific acts to be shown on cross-examination for the purpose of rebutting such testimony. The reason for this is obvious. A few bad acts, and sometimes one, in the community where committed, may give to the actor a bad reputation, while a thousand good ones may be shown without overcoming such rumors. A witness may on such occasions be cross-examined as to the grounds of his opinion, as to his acquaintance with the other person and his opportunities for acquiring information, as to the number and names of persons he has heard speak of him, and what they said, as to how long and how generally favorable or unfavorable reports have prevailed, as to his contradictory statements of opinion, and as to the particular trait for which the reputation of the other person is good or bad; but he should not be permitted to show specific acts or occupations concerning which the witness has not been interrogated on direct examination: 3 Enc. Ev. 47; Wigmore, Ev. § 1112, subd. 3. The testimony of this witness was hearsay and not proper cross-examination.

7. The testimony of B. C. Richardson, county judge, concerning which error is alleged, was also hearsay and under no circumstances admissible. His answers, however, were not responsive to the questions propounded; hence in the first instance could not well have been kept from the jury, and, the court on its own motion having instructed the jury not to consider any of the testimony given by this witness, we are of the opinion that prejudicial error cannot be predicated on its admission.

8. The testimony disclosed that, after appellant was placed under bonds to await the action of the grand jury, he left the country and was rearrested and returned, in reference to which the court said to the jury: "The flight of the defendant after having given bail to appear is a circumstance you may consider as tending to show guilty intent as charged"; and refused to give on the subject an instruction requested by the defense that "Flight is no evidence of guilt, but a circumstance which you may consider." Neither the instruction as given nor the one requested is proper. The error lies in the court assuming a fact to be established, which is entirely for the jury. The presumption of guilt arising from the flight of an accused, although but slight, is one of fact, and not of law, being a circumstance only, and the question as to whether the circumstance may tend to show a guilty intent is for the jury. As remarked by the court in *Ryan* v. *People,* 79 N. Y. 593, 601: "The evidence that the defendant made an effort to keep out of the way of the sheriff was very slight, if any, evidence of guilt. There are so many reasons for such conduct consistent with innocence that it scarcely comes up to the standard of evidence tending to establish guilt, but this and similar evidence has been allowed upon the theory that the jury will give it such weight as it deserves, depending upon the surrounding circumstances."

9. The court might properly have instructed that the flight of the defendant, if established, may be taken into consideration by them as a circumstance with other evidence adduced in determining whether the accused was guilty of the crime charged. Mr. Justice BEAN states the rule thus: "The competency of such evidence is one thing, and what it shows or tends to show is another and quite a different thing. The former is a question for the court, and the latter exclusively for the jury": *State* v. *Maloney,* 27 Or. 53, 55 (39 Pac. 398, 399). Cases involving this question are analogous to those in which

a person is charged with larceny and found in possession of the alleged stolen property. In such cases it is settled that such possession when established is only a fact which may be considered by the jury, and from which, when taken in connection with other circumstances, they may infer guilt. This circumstance, standing alone, is not sufficient to warrant a conviction: 12 Cyc. 395; *State* v. *Lee Hale,* 12 Or. 352 (7 Pac. 523); *State* v. *Maloney,* 27 Or. 55 (39 Pac. 398); *State* v. *Pomeroy,* 30 Or. 25 (46 Pac. 797); *State* v. *Sally,* 41 Or. 370 (70 Pac. 396); *State* v. *Hodge,* 50 N. H. 510; *Hickory* v. *United States,* 160 U. S. 408 (16 Sup. Ct. 327: 40 L. Ed. 474); *Alberty* v. *United States,* 162 U. S. 499 (16 Sup. Ct. 864: 40 L. Ed. 1051).

The other errors assigned relate to the giving by the court of instruction No. 10 defining "impeachment," and in refusing to give certain instructions requested by the defense. The instruction as given, while standing alone, would not constitute reversible error, but, like some instructions requested by the defense and refused by the court, is subject to the criticism suggested in *Russell* v. *Oregon R. & N. Co.,* 54 Or. 128 (102 Pac. 624), with reference to which Mr. Justice MCBRIDE observes: "Unless an instruction is so definite as to enable a man of average intelligence to understand it, it ought to be refused as misleading and tending to confuse rather than instruct a jury. A court is not bound to give, and ought not to give an instruction, even though it states the law correctly, which is not couched in language sufficiently untechnical to be comprehended by the average juror. Requests for instructions are permitted so that the jury may be fully informed as to the law, and not to enable litigants to ensnare an unwary court into technical error which will secure reversal in case of defeat."

Subject to the above suggestion, the requested instructions, with the exception of No. 10, and the last requested in reference to testimony of children, the giving of which

was discretionary with the court, were proper. Much of the substance of the requested instructions, however, was included in the general charge. Defendant's requested instruction No. 7 would be proper under some circumstances, but sufficient evidence does not accompany it to enable us to determine whether it is applicable to the case under consideration.

The judgment of the court below is reversed, and a new trial ordered.                                        REVERSED.