## TERRITORY *v.* EDWARD SCHARSCH.

## No. 1259.

EXCEPTIONS FROM CIRCUIT COURT FIFTH CIRCUIT.
HON. L. A. DICKEY, JUDGE.

ARGUED APRIL 19, 1920.                    DECIDED APRIL 28, 1920.

COKE, C. J., KEMP AND EDINGS, JJ.

CRIMINAL LAW—*trial—public trial—what constitutes.*

Under the Sixth Amendment to the United States Constitution declaring that in all criminal prosecutions the accused shall enjoy the right to a public trial it is error to exclude all persons excepting officers of the court and any one particular person whom the defendant would like to have present.

SAME—*same—same—same—presumption of enforcement of order.*

In the absence of a showing to the contrary it is to be presumed that an order excluding the public from the courtroom during a criminal trial was enforced and that it was prejudicial to the rights of the defendant.

SAME—*same—same—same—denial of constitutional right—presumption of prejudice—burden of proof.*

Where a defendant is denied the constitutional right of a public trial he is presumed to be prejudiced and the burden is not upon him to show injury by reason of the deprivation.

OPINION OF THE COURT BY COKE, C. J.

The defendant Edward Scharsch was indicted, tried and convicted in and before the circuit court of the fifth judicial circuit for the crime of seduction and has now brought the cause to this court upon a bill of exceptions. The bill contains twenty-seven separate exceptions, all of which are set out in detail. Such exceptions as are dealt with in this opinion will be taken up in the order of their importance.

After the jury was impaneled and sworn the complaining witness, Mary Mandrigues, was duly sworn and was about to proceed with the giving of her testimony when the following proceedings took place:

The Court. "I order all those in the courtroom to leave except the officers of the court."

Mr. Rice (counsel for defendant). "We object to the direction of the court on the ground that it will deprive the defendant of his constitutional rights of a public trial."

The Court. "Is there any one in particular whom the defendant would like to have present?"

Mr. Rice. "No one in particular, but the defendant objects to the exclusion of the public from the courtroom. I make this objection to save the rights of the defendant."

The Court. "The objection is overruled."

Mr. Rice. "We note an exception."

This proceeding is made the subject of defendant's exception No. 5.

While the record does not disclose whether the order was carried into effect, in the absence therein of some showing to the contrary it must be presumed that the order was enforced and if erroneous it was prejudicial to the rights of the defendant. See *State* v. *Osborne*, 54 Ore. 289.

It is submitted by the defendant that the order of the court deprived him of a public trial as guaranteed by the sixth amendment to the national Constitution, which provides: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial." A trial court is possessed of rather wide discretion in the conduct of its proceedings. The court may exclude from the courtroom even in criminal cases persons who become hysterical or those who may be inclined to disturb the orderly progress of the trial or minors during a class of trials the

evidence in which would tend to degrade public morals or to shock public decency. In extreme cases an order excluding a large portion of the spectators has been sanctioned. But we are aware of no case in this country either in the federal or state courts upholding the course pursued by the circuit court in the present case. In many cases where the order of exclusion was much less sweeping than the one entered herein the appellate courts have uniformly condemned the proceedings in the strongest language.

It seems to be settled that the first ten articles of amendment to the Federal Constitution were not intended to limit the powers of the state governments in respect to their own people but to operate for the national government alone. This was determined almost a century ago by the Supreme Court of the United States in an opinion written by Chief Justice Marshall which has been steadily adhered to to the present date. *Barron* v. *Baltimore,* 32 U. S. 242; *Spies* v. *Illinois,* 123 U. S. 131; *Brown* v. *New Jersey,* 175 U. S. 172. But that the Sixth Amendment is in force in the territories of the United States was determined in *Rassmussen* v. *United States,* 197 U. S. 516, and that it is in force in this Territory was specifically held in *Ex Parte Higashi,* 17 Haw. 428, 441. Many, if not all, of the state constitutions contain a provision similar to the Sixth Amendment to the Federal Constitution and therefore the decisions of the state courts dealing with the question here involved have application to the case at bar.

In *People* v. *Murray,* 89 Mich. 276, the opinion is summarized in the syllabus as follows: "An order by a court in a criminal case directing an officer to stand at the door of the courtroom 'to see that the room is not overcrowded and that all respectable citizens be admitted and have the opportunity to get in when they shall apply'

violates the rights of the respondent to a public trial guaranteed to him by section 28, article 6 of the Constitution."

*People* v. *Hartman*, 103 Cal. 242, is peculiarly analogous to the case at bar. We quote from the opinion: "The appellant was convicted of an assault with intent to commit rape, and now presents his appeal from the judgment of conviction. When the information had been read to the jury and the defendant's plea stated, on motion of the district attorney and against the objection of the defendant, the court made an order excluding from the courtroom, during the trial of the case, all persons except the officers of the court and the defendant. This was a novel procedure, and has no justification in the law of modern times. We know of no case decided in this country supporting the course of procedure here pursued. It is in direct violation of that provision of the constitution which says that a party accused of crime has a right to a public trial. The fact that the officers of the court were allowed to be present in no way made the trial public. For the purposes contemplated by the provision of the constitution, the presence of the officers of the court, men whom, it is safe to say, were under the influence of the court, made the trial no more public than if they too had been excluded. While a right to the public trial contemplated by the constitution does not require of courts unreasonable and impossible things, as that all persons have an absolute right to be present and witness the court's proceeding, regardless of the conveniences of the court and the due and orderly conduct of the trial, yet this provision must have a fair and reasonable construction in the interest of the person accused. Judge Cooley, in his work upon Constitutional Limitations, page 383, has well declared the true rule in the following language: 'The requirement of a public trial is for the

benefit of the accused; that the public may see that he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility, and to the importance of their functions; and the requirement is fairly observed if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn hither by a prurient curiosity, are excluded altogether.' "

In *Williamson* v. *Lacy*, 86 Me. 80, Mr. Chief Justice Peters dealt with the subject now before us in the following emphatic manner: "History brings us too vivid pictures of the oppressions endured by our English ancestors at the hands of arbitrary courts ever to satisfy the people of this country with courts whose doors are closed against them. They instinctively believe that it is their right to witness judicial trials and proceedings in the courts. It is true that courts have discretionary powers to be exercised in such a matter—but not an unlimited discretion. The almost boundless authority exercised by the court of Star Chamber in England was the seed of its own destruction, and was its historical infamy. Its lessons are not lost on the courts of today. We never knew of any court of general jurisdiction in this state conducting a strictly private criminal trial, nor, before this, of such a trial before a common magistrate."

In *State* v. *Osborne, supra,* Mr. Justice King, in an admirable opinion which virtually exhausts the subject, holds that a court order in a prosecution for assault with intent to commit rape which excluded from the courtroom all persons except the defendant, the attorneys engaged in the trial, the jury and officers of the court and the wit-

nesses while on the stand was error and condemns it in vigorous language.

A most recent case is *Davis* v. *United States,* 247 Fed. 394. In the opinion of the court rendered in that case the subject is dealt with at length and the leading authorities are collected and reviewed. We quote from the opinion as follows: "Near the conclusion of the trial which lasted several days a night session of the court was held for the arguments to the jury. When the jurors were in the box, and just before the court-convened, the courtroom, which had become crowded, was by the direction of the trial judge cleared of all spectators except relatives of the defendants, members of the bar, and newspaper reporters, and a bailiff at the door was instructed to admit none but those of the excepted classes. The bailiff thereafter admitted a few others, but it was by way of favor of the court officers. Some citizens against whom no objection appeared on account of character or condition afterwards sought and were denied admission. The seats in the audience part of the courtroom back of the bar rail would have accommodated at least 100 spectators. About 25 were allowed to be present. Within the rail, besides the court officials and the defendants, a couple of women relatives of the latter, a few newspaper men, and about 10 members of the bar were present. The reasons for the action of the court were these: The crime of which defendants were charged had connection with a train robbery, and the trial, which was held at Muskogee, Okl., excited more than ordinary interest. At previous sessions the courtroom was crowded with spectators, so much so that in one instance the court directed the bailiffs to clear the aisles, so that witnesses would not be impeded when called. Considerable ill feeling had developed between the defendants, their relatives and friends, and some of the witnesses for the prosecution, and the court

had placed the latter in the custody and care of an offi-
cer. Precautions had also been taken that defendants
should come unarmed into the courtroom. On the even-
ing of the night session an encounter occurred in a res-
taurant, in which a relative of one of the defendants hit
a witness for the prosecution across the face with a
newspaper. This was reported to the court; also that
one or more of the witnesses in the courtroom were intox-
icated. It does not appear that the courtroom was
crowded beyond its seating capacity when the order to
clear it was made, or that any person was making a dis-
turbance or threatening to do so, or that there was any
well-founded apprehension that a disturbance would
occur.

"We appreciate the better position of the trial court
to appraise the significance of surrounding conditions,
but we cannot avoid the conviction that it acted upon the
representations of those who did not adequately realize
the great importance of keeping a place where the justice
of the nation is judicially administered a public place
for the admission of peaceful citizens. An intoxicated
man could have been excluded or removed; the aisles
and passageways could have been kept clear; when the
seats were filled, other spectators could have been denied
at the door; if the noise in the lobbies interfered with the
proceedings, the lobbies could have been cleared; and
individuals whose conduct outside the courtroom made
their presence within a menace might have been excluded.
But it is quite a different thing to exclude the public gen-
erally, regardless of their conduct or character. The
Sixth Amendment provides that 'in all criminal prosecu-
tions the accused shall enjoy the right to a * * * public
trial.' The provision is one of the important safeguards
that were soon deemed necessary to round out the Con-
stitution, and it was due to the historical warnings of

the evil practice of the Star Chamber in England. The corrective influence of public attendance at trials for crime was considered important to the liberty of the people, and it is only by steadily supporting the safeguard that it is kept from being undermined and finally destroyed. As the expression necessarily implies, a public trial is a trial at which the public is free to attend. It is not essential to the right of attendance that a person be a relative of the accused, an attorney, a witness, or a reporter for the press, nor can those classes be taken to be the exclusive representatives of the public. Men may have no interest whatever in the trial, except to see how justice is done in the courts of their country. The qualifications of the broad scope of the constitutional provision and of like provisions in the constitutions of the states are few, and are based upon considerations of public morals and peace and good order in the courtrooms. * * * It is urged that no prejudice to defendant was shown. A violation of the constitutional right necessarily implies prejudice and more than that need not appear. Furthermore, it would be difficult, if not impossible, in such cases for a defendant to point to any definite, personal injury. To require him to do so would impair or destroy the safeguard."

We might with entire propriety adopt the foregoing language as our opinion in this case for little in addition is left to be said. The order of the court in the present case deprived the accused of a right guaranteed to him by the Federal Constitution and the exception thereto must be sustained.

The other exceptions brought up have reference mainly to the overruling by the court of the defendant's demurrer to the indictment, his motion to make the bill of particulars more specific, his motion for a directed verdict and his motion for a new trial, also errors alleged

to have been committed by the trial court having to do with the introduction of evidence at the trial of the cause and certain of the instructions given to the jury at the request of the prosecution as well as the refusal to give other instructions requested by the defendant.

The indictment is laid in the language of the statute and falls short of setting forth specifications of acts and descriptive circumstances as to sufficiently fix and determine the identity of the offense with such particularity as to apprise the accused of what he has to meet. See *Territory* v. *Pupuhi,* 24 Haw. 565; 22 Cyc. 293. After the demurrer was overruled defendant presented a motion for a bill of particulars. The prosecution thereupon presented a bill of particulars which we think sufficiently describes the offense charged and thus cured the defects in the indictment.

Such other errors, if any, as were committed by the trial court prejudicial to the rights of the defendant we think will not recur on a new trial of the case hence no useful purpose will be served by a discussion of the other exceptions.

Defendant's exception No. 5 is sustained and the cause is remanded for a new trial.

*E. K. Aiu* for the Territory.

*P. L. Rice* for defendant.