The jury, without leaving their seats, found for the defendants.

## Case No. 16,737.
### UNITED STATES v. WILSON.
[6 McLean, 604.] 1

Circuit Court, N. D. Ohio. Nov. 23, 1855.

GRAND JURY—SELECTION FOR FEDERAL COURT—ABSENCE OF JUROR—CONCLUSIVENESS OF RECORD.

[1. By Act Cong. July 20, 1840 (5 Stat. 394), providing for the adoption in the federal courts of the methods of the highest courts of the respective states in selecting jurors "in so far as such mode may be practicable," the federal court sitting in Ohio had authority in its discretion to adopt the mode of impaneling grand juries practiced in the inferior courts of the state.]

[2. If 12 jurors agree in finding an indictment, it cannot be invalidated by showing that 1 of the 15 jurors was absent at the time of such finding.]

[3. Where the record shows that the grand jury found the bill of indictment on their oaths, the intendment and legal effect and presumption is that it was found on proper evidence, with due deliberation, and by the concurrence of 12 of their number.]

[This was an indictment against Joseph L. Wilson. Motion to quash.]

Upham, Carter, Adams & Brooks, for the defence.

McLEAN, Circuit Justice. This is a motion to quash the indictment, and three causes are

1 [Reported by Hon. John McLean, Circuit Justice.]

assigned. The 1st is, that the grand jury who found and returned the bill, was not drawn, selected and designated, according to law. The 2d is, that the bill was found by fourteen grand jurors only; or, in other words, that one of the fifteen grand jurors was absent when said bill of indictment was found. The 3d is, that said bill of indictment was returned into court by fourteen grand jurors only.

From the view I have taken of the causes urged for granting this motion, it is perhaps unnecessary to consider the point in controversy between counsel as to the right or propriety of allowing the defendant to change his plea. I supposed, when that application was made and leave granted, that it was fully understood, and agreed to, by opposite counsel. This motion will therefore, be disposed of without any intention on the part of the court to furnish the precedent, of allowing a plea in bar to be withdrawn, in order to file a plea in abatement, or of a motion of the character of a dilatory plea. To the first question, then, raised by this motion—"Was the grand jury of the last July term of this court a legally constituted grand jury?" By the act of congress of the 20th of July, 1840 [5 Stat. 394], it is provided "that jurors to serve in the courts of the United States, in each state respectively, shall have the like qualifications and be entitled to the like exemptions, as jurors of the highest courts of law of such state now have and are entitled to, and shall hereafter, from time to time have, and be entitled to, and shall be designated by ballot, lot, or otherwise, according to the mode of forming such juries now practiced, and hereafter to be practiced therein, in so far as such mode may be practicable by the courts of the United States, or the officers thereof; and for this purpose, the said courts shall have power to make all necessary rules and regulations for conforming the designations and empannelling of juries, in substance, to the laws and usages now in force in such states; and further, shall have power, by rule or order, from time to time, to conform the same, to any change in these respects which may be hereafter adopted by the legislature of the respective states for the state courts." By the first clause of this statute the enactment is positive in its requirements, that so far as the qualifications and exemptions of jurors in the federal courts are concerned, they should be the same as those of the highest courts of law of the state, and that the mode of forming such juries, should, so far as practicable, conform to the mode of the state for the highest courts of law in such state. So far as relates to the qualifications and exemptions of federal juries, the courts have no discretion. The law is positive that they shall have the like qualifications, and be entitled to the like exemptions as jurors of the highest courts of law of such state had at the time of pass-

ing the law, or should thereafter have in such state. By the latter clause of the statute the language used is—"The said courts shall have power to make all necessary rules and regulations for conforming the designation and empannelling of juries, in substance, to the laws and usages now in force in such state; and further, shall have power by rule or order, from time to time. to conform the same to any change in these respects which may hereafter be adopted by the legislature of the respective states for the state courts." It was clearly the intention of the framers of this law, to confer upon the federal courts a discretionary power, to be exercised as they should deem proper, in forming rules and regulations for the designation and empannelling of jurors

The courts, from necessity, were to exercise a discretion as to the practicability of designating and empannelling juries according to the mode prescribed for selecting juries of the the highest courts of law in the state. They have the power and the discretion to change the mode from time to time. The court may exercise the power or refrain to exercise it, as it may now deem practicable. But what was the mode of selecting grand juries, at the time this act of the 20th July, 1840, was passed, in the highest court of law in the state of Ohio? The highest court of law in the state, at that time, was the supreme court of Ohio, and the jury law then in force was the act of the 9th of February, 1831. The only provision for selecting juries for the supreme court is found in the fifth section of the act. This section provides, "that the clerk, at least thirty days previous to the sitting of the supreme court, in the presence of the sheriff, shall draw out of the box in which is contained the names selected as aforesaid, twelve persons, and shall forthwith deposit in the office of the clerk of the supreme court of said county, a list of the names so drawn, and the clerk of the supreme court shall immediately issue a venire." It would hardly be claimed by a lawyer of discrimination and candor, that a court should receive commendation for selecting and empannelling a grand jury according to any mode which existed in the highest court of law in Ohio on the 20th of July, 1840. Neither will it be found that any material change has taken place, by legislative enactment, in the selection of juries in Ohio, since the adoption of the new constitution. This court, therefore, from the necessity of the case, was obliged to exercise that discretionary power, conferred on it by the act of congress, determining the mode of designation and empannelling grand juries. By the 4th rule the mode is assimilated to that practiced in the inferior courts of the state, and the court has seen to it, that in practice, that mode has been substantially carried out. As a matter of fact, the first fifteen names drawn from the box, constitute the grand jury, and for those the venire issues. The rule contemplates, that in case any of the fifteen should fail to attend, the marshal should fill the panel from the remaining nine names drawn. It was hoped by this careful mode of selection, the grand inquest of the district would be composed of men whose character and standing would command the respect and confidence of all; and however sincere counsel may be in imputing to the court a disregard of law, and an indifference in the formation and adoption of the rule, we are nevertheless satisfied, that it secures for this court, what all must desire, viz: jurymen of integrity, intelligence and impartiality.

In relation to the second cause urged in support of this motion, I must confess that its consideration has been attended by no small degree of embarrassment. At the last term. in the absence of the presiding judge of this circuit, some days elapsed, in which the grand jury, fourteen in number, were desirous to come into court and report several bills, and this, probably among the number. I then had doubts as to the power of fourteen grand jurors to report a bill, and my doubts were increased by reading the sententious language of the learned judge who delivered the opinion of the court in the case of Doyle v. State, 17 Ohio, 222. On the arrival of the presiding judge, the grand jury reversed their application. The experienced judge presiding took the ground at once, that the court should not look. beyond the endorsement upon the indictment of a true bill, signed by the foreman; especially when a greater number than twelve appeared in court to make the presentment. This was upon the hypothesis, that fifteen qualified grand jurors had been empannelled. sworn and sent out, as the grand inquest of the district. To this ruling of my learned brother I assented, though reluctantly at the time, and the fourteen grand jurors came into court and reported several bills. There is doubtless a broad and substantial distinction to be observed between the action of an illegally constituted grand jury, and that of a jury all of whom are legally qualified members.

In the limited time which I have had to examine the question, I find no case where the indictment has been declared vitiated by the irregularity of one member of a properly constituted grand jury, while on the contrary, numerous adjudged cases are to be found, where the action of the whole panel has been pronounced void, in consequence of containing one or more unqualified members. In England, it would seem that formerly, twelve grand jurors could return a bill. Lord Mansfield, in 1760, when application was made to have the panel exceed twenty-three names, refused the application, and held that for the purpose of finding or reporting a bill, twelve men of the panel agreeing would be regarded as the grand jury. 2 Burrows, 1088. The act of 11 Hen. IV. provided, that the grand jurors should be of the king's liege people, returned by sheriffs or bailiffs of franchise, and of whom none should be outlawed, or fled to

sanctuary for treason or felony, otherwise the indictment should be void. And by the same act it was provided that if any one of the grand jurors should be an outlaw, the indictment should be void. The case of Dovey v. Hobson [6 Taunt. 460] is a leading authority for construing the act, and declares that the mischief was, that persons were put on the jury who were not qualified to serve, that they had no right on the jury, and that their presence vitiated the whole panel, and rendered their action void; and for the plain reason, that the bill must be found by at least twelve, and that the disqualified juror might be one of the twelve. The American cases have nearly all proceeded on this same principle. It is recognized in the case Com. v. Parker, 2 Pick. 550, referred to by counsel, and very earnestly contended for by the court in the Case of Doyle, 17 Ohio, 222. The principle established is, that if a person is on the panel not having the qualification of a juror as required by law, the action of the whole jury is vitiated and an indictment found by them would be void. The statute of Ohio has always required that regular juries should be composed of persons having the qualifications of electors, and the supreme court of the state, in its interpretation and construction of the statute has gone to the full extent of strictness adopted by the English courts in their decisions upon the statute of 11 Hen. IV.

But a very different question is presented by this motion. It is not claimed that any of the jury were disqualified to serve by reason of not being qualified electors in the district. Taking for granted that the whole panel was composed of good and lawful men, the counsel claim that the absence of one of the fifteen vitiates the action of the whole, and that this irregularity of the jury can be inquired into by motion to quash the indictment. On this question the Case of Turk, 7 Ohio, 241, is to the point, and decisive of this motion. The court there held, that if twelve jurors agree in finding an indictment, it cannot be invalidated by showing misconduct of one of the fifteen jurors, nor can inquiry be made upon what grounds any one of the twelve jurors concurred in the finding. In that case the exception was taken by plea; in which plea it was averred, "that Geo. Parsons, one of the grand jurors, was not present at the finding of the indictment, did not hear any witness, nor examine, nor inquire touching any allegation of the indictment, and that as to him there was no inquest whatever." The court there overruled the plea, and its decision enunciated the principles of law, familiar to all, that the record cannot be contradicted; that a record is proved by itself, and is of such validity that no fact can be averred against it.

In the motion now before the court, how stands the case? The record shows the grand jury found the bill of indictment on their oaths. The intendment and legal effect and presumption is, that it was found on proper evidence, with due deliberation, and by the concurrence of twelve of their number. The Case of Doyle, 17 Ohio, 222, does not invalidate the authority of the case in 7 Ohio. In Doyle's Case one of the grand jurors was not an elector, and had not the statute qualification of a juror, and the simple and legitimate question for the court to decide there was, whether an illegally constituted grand jury, (by the disqualification of one of its members), rendered the indictment void, and the court very properly held it did. The question now before this court was not embraced in that case.

The 3d point urged in support of this motion, is substantially embraced in the 2d, and would stand or fall with it.

Upon consideration, therefore, of all the points, the court overrules this motion.