Argued and submitted May 13, decision of the Court of Appeals on reconsideration of both cases reversed; *State v. Conger* remanded to the Court of Appeals for further consideration; judgment of the circuit court in *State v. Daugherty* affirmed August 11, 1994

STATE OF OREGON,
*Petitioner on Review,*

*v.*

IVY FRANCINE CONGER,
*Respondent on Review.*

(CC 90-10-1676-C; CA A72340)

STATE OF OREGON,
*Petitioner on Review,*

*v.*

BENNY CARL DAUGHERTY,
*Respondent on Review.*

(CC 91-01-1702-C; CA A71205)
(SC S40908)
(Cases Consolidated)

878 P2d 1089

Virginia L. Linder, Solicitor General, Salem, argued the cause for petitioner on review. With her on the petition and the reply was Theodore R. Kulongoski, Attorney General, Salem.

David E. Groom, Deputy Public Defender, Salem, argued the cause for respondents on review. With him on the response was Sally L. Avera, Public Defender, Salem.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

VAN HOOMISSEN, J.

Unis, J., dissented and filed an opinion in which Fadeley, J., joined.

## VAN HOOMISSEN, J.

Article VII (Amended), section 5(2), of the Oregon Constitution, provides:

> "A grand jury shall consist of seven jurors chosen by lot from the whole number of jurors in attendance at the court, five of whom must concur to find an indictment."

The issue in these consolidated cases is whether that provision requires that *seven* grand jurors hear evidence to find an indictment for that indictment to be constitutionally valid. The Court of Appeals held that an indictment found by fewer than seven grand jurors violated Article VII (Amended), section 5(2), and reversed and remanded these cases to the trial court with instructions to quash the indictments. *State v. Conger*, 125 Or App 355, 866 P2d 469, *modifying* 120 Or App 220, 851 P2d 636 (1993) and *State v. Daugherty*, 116 Or App 665, 841 P2d 704 (1992). We allowed the state's petition for review. For the reasons that follow, we reverse.

Defendant Conger was indicted by the grand jury of Harney County for delivery of a controlled substance and conspiracy to deliver a controlled substance. Defendant Daugherty was indicted by the same grand jury for delivery of a controlled substance.

Defendants moved to quash the indictments on the ground that, at the time the grand jury found the indictments, it was not comprised of seven grand jurors, citing Article VII (Amended), section 5(2).

At a consolidated hearing on the motions to quash, the parties stipulated that, at the time the indictments were found,

> "[t]he Grand Jury had six people present, one of the jurors was not present. The district attorney obtained a Motion and Order authorizing him to proceed with less than seven (7) Grand Jurors. The reason the grand juror was not present is, that he left for his winter vacation in Arizona. He was not planning to be back until the end of February. He notified the district attorney of this fact on January 2nd, 1991."

Defendants argued in the trial court that the district attorney had not shown "good cause" for proceeding with fewer than seven grand jurors and, therefore, that the state

had not complied with ORS 132.110(3).[1] In the alternative, defendants argued that ORS 132.110(3) is unconstitutional under Article VII (Amended), section 5(2). The trial court ruled that the juror's absence from the county was for "good cause" and, thus, satisfied the requirements of ORS 132.110(3). The court further ruled that ORS 132.110(3) did not violate Article VII (Amended), section 5(2), of the Oregon Constitution.

After conviction, defendants appealed, arguing that the trial court erred in denying their motions to quash the indictments.[2] The Court of Appeals reversed in each case. *State v. Conger, supra,* 120 Or App at 221; *State v. Daugherty, supra,* 116 Or App at 665. In each case, the Court of Appeals relied on its earlier decision in *Goodwin v. State of Oregon,* 116 Or App 279, 840 P2d 1372 (1992) (*Goodwin I*), in which that court held that an indictment found by fewer than seven grand jurors violates Article VII (Amended), section 5(2), of the Oregon Constitution.

The state obtained permission to consolidate *Conger* and *Daugherty* and then petitioned for review. The Court of Appeals treated the state's petition as one for reconsideration. *Former* ORAP 9.15.

The Court of Appeals then allowed reconsideration in *Goodwin I,* and withdrew its earlier opinion in that case, stating:

---

[1] ORS 132.110 provides:

"After the formation of the grand jury and before it is discharged, the court may:

"(1) Discharge a grand juror who:

"(a) Becomes sick, is out of the county or fails to appear when the grand jury is summoned to reconvene;

"(b) Is related, by affinity or consanguinity within the third degree, to the accused who is under investigation by the grand jury, or held for the commission of a crime; or

"(c) Is unable to continue in the discharge of duties.

"(2) Order that another person be drawn at random and sworn from the jurors then in attendance upon the court, or if no other jurors are there in attendance, from the master jury list of the county, to take the place of a discharged juror.

"(3) Allow at least five grand jurors to proceed upon good cause shown."

[2] Defendant Conger also made several other assignments of error. Because of the Court of Appeals' resolution of the Article VII (Amended), section 5(2), issue, it did not reach Conger's other assignments.

"After we issued our opinion [in *Goodwin I*], the Supreme Court decided *State v. Pratt*, 316 Or 561, 853 P2d 827 (1993). Relying on our opinion in this case, the defendant there argued on direct appeal that he was entitled to dismissal of the indictment, because the grand jury that had issued the indictment against him was made up of fewer than seven members. The Supreme Court held that it would not consider the defendant's challenge to the constitutionality of the indictment, because he did not make a timely motion at trial to set aside the indictment, and therefore the error was not preserved. * * *.

"* * * * *

"The holding in *Pratt* regarding preservation of error on direct appeal does not directly affect this post-conviction case, but it does affect it indirectly. Although petitioner's failure to preserve the grand jury issue does not preclude him from raising it as a basis for post-conviction relief, we read *Pratt* as leading logically to the conclusion that, even if the issuance of an indictment by a grand jury of fewer than seven members is a constitutional violation, that violation does not make the conviction void. * * *. That is, we read *Pratt* as holding implicitly that the conviction based on the defective indictment, even assuming that the defect was one of constitutional dimensions, was at most voidable, but was not void *ab initio.*" *Goodwin v. State of Oregon*, 125 Or App 359, 361, 363, 866 P2d 466 (1993), *rev den* 319 Or 80 (1994) (*Goodwin II*).[3]

On December 22, 1993, the same day that the Court of Appeals released *Goodwin II*, that court issued its opinion on reconsideration in these consolidated cases, 125 Or App 355, noting that, in its opinion on reconsideration in *Goodwin II*, 125 Or App 359, the court had not reconsidered whether the constitutional issue in *Goodwin I* had been wrongly decided. The court then held:

"We decline to reconsider the merits of the constitutional argument and expressly adopt and incorporate in this opinion our analysis of [the constitutional] issue that was

---

[3] *State v. Pratt*, 316 Or 561, 567-68, 853 P2d 827, *cert den* ___ US ___, 114 S Ct 452, 126 L Ed 2d 384 (1993), stated in part: "Any right that defendant may have had to have the indictment set aside — and we express no opinion on that question — had to be exercised in a timely manner[.]" *See also State ex rel Schrunk v. Bonebrake*, 318 Or 312, 865 P2d 1289 (1994) (motion to set aside indictment on ground that the grand jury consisted of fewer than seven members, made after court had reached verdict, was untimely).

included in the original *Goodwin* decision. 116 Or App at 281-84. Because the indictments in these cases were issued in violation of Article VII (amended), section 5(2), and defendants preserved the error for appeal, we adhere to our reversal of the convictions in these cases." *State v. Conger, supra,* 125 Or App at 357.

We allowed the state's petition for review.

The state contends that the constitutional issue in *Goodwin I,* as incorporated by the Court of Appeals' decision into the present cases, was wrongly decided. The state argues that Article VII (Amended), section 5(2), does not require all seven grand jurors to hear all evidence and to vote to find an indictment.

Article VII (Amended), section 5(2), of the Oregon Constitution, provides:

"A grand jury shall consist of seven jurors chosen by lot from the whole number of jurors in attendance at the court, five of whom must concur to find an indictment."

Defendants first argue that this court need not reach the constitutional issue, because a statutory basis exists for affirming the Court of Appeals' decision. Defendants assert that the "good cause" requirement of ORS 132.110(3) was not satisfied in this case. The state responds that, although that statutory issue was raised in the trial court, defendants have waived it, because they did not pursue it in the Court of Appeals.

■ This court decides cases on subconstitutional grounds, where available, even though litigants argue only constitutional error. *Zockert v. Fanning,* 310 Or 514, 520, 800 P2d 773 (1990). We therefore consider whether a violation of ORS 132.110 that does not amount to a constitutional violation provides a basis for defendants to challenge their indictments.

ORS 135.510(1) provides:

"The indictment shall be set aside by the court upon the motion of the defendant in either of the following cases:

"(a) When it is not found, indorsed and presented as prescribed in ORS 132.360, 132.400 to 132.430 and 132.580.

"(b)   When the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment or indorsed thereon."

ORS 135.630 provides:

"The defendant may demur to the accusatory instrument when it appears upon the face thereof:

"(1)   If the accusatory instrument is an indictment, that the grand jury by which it was found had no legal authority to inquire into the crime charged because the same is not triable within the county;

"(2)   If the accusatory instrument is an indictment, that it does not substantially conform to the requirements of ORS 132.510 to 132.560, 135.713, 135.715, 135.717 to 135.737, 135.740 and 135.743;

"(3)   That the accusatory instrument charges more than one offense not separately stated;

"(4)   That the facts stated do not constitute an offense;

"(5)   That the accusatory instrument contains matter which, if true, would constitute a legal justification or excuse of the offense charged or other legal bar to the action; or

"(6)   That the accusatory instrument is not definite and certain."

■    Those statutes do not provide a basis for setting aside an indictment based on a claim of a violation of the "good cause" shown requirement of ORS 132.110(3). Although a defendant may make a *constitutional* challenge to grand jury proceedings without specific statutory authority to do so, that is not true of a *statutory* challenge. *See State v. Gortmaker*, 295 Or 505, 507-10, 668 P2d 354 (1983) (so indicating, citing cases), *cert den* 465 US 1066 (1984). Because the trial court could not have set aside defendants' indictments based on their claim that the "good cause" requirement of ORS 132.110 had not been satisfied, that statute does not provide a subconstitutional basis on which this court may affirm the Court of Appeals' decision. We therefore turn to defendants' Article VII (Amended), section 5(2), challenge to ORS 132.110(3).

■    In examining a constitutional provision, this court looks to the "specific wording, the case law surrounding it, and the historical circumstances that led to its creation."

*Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). Defendants argue that the specific wording of Article VII (Amended), section 5(2), "[a] grand jury shall consist of seven grand jurors," is unambiguous and that it means that all seven must be present to hear the evidence and find an indictment, in which at least five of the seven grand jurors must concur. Defendants further argue that there is no need to look beyond the specific wording, because the only possible interpretation is that, in essence, the seven grand juror requirement is a quorum requirement — the grand jury, like the petit jury, may not deliberate or vote without all its members being present.

We are not persuaded that Article VII (Amended), section 5(2), is unambiguous. Although the phrase "[a] grand jury shall consist of seven jurors" plainly requires that seven jurors be empaneled initially to create a grand jury, the phrase does not necessarily also prescribe the number of grand jurors that constitutes a quorum to find an indictment. It is possible to read Article VII (Amended), section 5(2), as allowing a grand jury, empaneled initially with seven members, to find an indictment with only five or six grand jurors voting, so long as five concur. That is to say, Article VII (Amended), section 5(2), may be read as requiring only a quorum of five, the number of jurors that must concur to find an indictment, rather than a quorum of seven. Such a reading of Article VII (Amended), section 5(2), is at least as reasonable as defendants' reading of that provision. We conclude that the specific wording of Article VII (Amended), section 5(2), does not unambiguously mean that seven grand jurors must vote in order to find an indictment.

The issue of whether the Oregon Constitution imposes a requirement that seven grand jurors must be present to hear the evidence and find an indictment has not been addressed by this court's prior cases. We turn to the "historical circumstances" that led to the creation of the grand jury provision of the Oregon Constitution to determine whether seven grand jurors must be present when an indictment is voted.

As originally adopted in 1859, the constitutional provision at issue, then Article VII (Original), section 18, provided:

"The legislative assembly shall so provide that the most competent of the permanent citizens of the county shall be chosen for jurors; and *out of the whole number in attendance at the court, seven shall be chosen by lot as grand jurors, five of whom must concur to find an indictment*; but the Legislative Assembly may modify or abolish grand juries." (Emphasis added.)

This court has summarized later amendments to the grand jury provision in *State v. Gortmaker, supra*, 295 Or at 513-14, as follows:

"In 1899, the legislature authorized as an alternative to indictment by grand jury, prosecution on information of the district attorney. Or Laws 1899, p 99. A 1908 constitutional amendment repealed the 1899 statute prospectively and required indictment in all cases. In 1910, Section 18 was amended by Section 5 which substantially added language to the selection process * * *.

"* * * * *

"A 1927 amendment to this section permitted waiver of indictment by the accused, with power in the district attorney to proceed by information * * *.

"* * * * *

"A 1958 amendment repealed Section 18 of Article VII (Original) and empowered the court to empanel more than one grand jury in a county. In 1974, Article VII (Amended), section 5, of the Oregon Constitution was repealed following a referendum vote by the people. The following section was adopted:

"* * * * *

" '(2) A grand jury shall consist of seven jurors chosen by lot from the whole number of jurors in attendance at the court, five of whom must concur to find an indictment.' "

Before 1974, no changes were made to the part of the constitutional provision concerning the number of grand jurors. Although some of the wording of that provision was changed slightly by the 1974 amendment, *see* text *supra*, the parties in this case do not argue, and we do not conclude, that the amendment altered the meaning of that provision in any significant manner.[4]

---

[4] The 1974 constitutional amendment came about after the 1973 legislature referred to the voters all of the current provisions of Article VII (Amended), section 5.

Many provisions of the Oregon Constitution were based on similar provisions in the constitutions of Indiana and other states. *See, e.g.,* Palmer, *The Sources of the Oregon Constitution,* 5 Or L Rev 200 (1926) (summarizing provisions and their likely sources). However, the provision that "seven shall be chosen by lot as grand jurors, five of whom must concur to find an indictment" seems to have been unique in 1859; at that time no other state appears to have specified a required number of grand jurors in its constitution.[5]

That provision was debated at some length during the 1857 Oregon constitutional convention. Summaries of the constitutional debates were published by contemporary newspapers such as the Weekly Oregonian (Portland) and the Oregon Statesman (Salem), and are reprinted in Carey, *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857* 57-399 (1926). We now turn to the history of the constitutional debate on this issue.

The constitutional convention's judiciary committee proposed the following provision for Section 8 of the article on the judiciary:

"The legislature shall provide that the most competent of the permanent citizens of the county shall be chosen for jurors; and out of the whole number in attendance at the court ____ shall be drawn by lot as grand jurors ____ of whom must concur to find an indictment[.]" (Blank spaces in original.)

On August 27, 1857, Mr. Logan offered a resolution "that provision be made in the constitution for the abolition of grand juries and the substitution of some other mode of presenting crimes and offenses to the courts for trial." That

_____

The legislative history indicates that the Article VII (Amended), section 5(2), was not intended to make a substantive change to the grand jury provision, but to make the provision easier to understand. *See* Minutes, House Judiciary Committee, May 2, 1973, at 8; Proposed Oregon Criminal Procedure Code 304, Appendix, Commentary (1972).

[5] Although it has been said that much of Article VII (Original), pertaining to the judicial department, was drawn in part from the Wisconsin Constitution of 1848, *see* Palmer, *The Sources of the Oregon Constitution,* 5 Or L Rev 200, 207 (1926), *State v. Gortmaker,* 295 Or 505, 513 n 11, 668 P2d 354 (1983), *cert den* 465 US 1066 (1984), the Wisconsin constitution did not impose a size requirement on its grand jury.

resolution was tabled without discussion. Carey, *supra*, at 197. On August 28, 1857, the issue was taken up, at which time Mr. Logan again suggested abolition of grand juries. As reported in the Oregonian:

> "Mr. Logan went into the history of the rise and origin of grand juries, which he said had their origin in England in the days of the feudality, when it was dangerous, on account of the turbulence of the times and the desperate character of individuals, for any person to prefer a complaint against another, especially if that other belonged to the privileges. He argued that the necessity which then existed had been done away with, and that in this age of liberty and light such inquisitions were a disgrace to a country boasting of its freedom. He instanced cases of hardship arising from them, and from this and their expensive character, and from the additional fact of their well-known impotency to effect any good in the community, he was of opinion they should be abolished. Other states had taken the initiative in matters of reform — for instance, that judges should be elected by the people; and he believed if Oregon took the lead in this matter other states would in due time take the hint and follow her example." Carey, *supra*, at 212, quoting Weekly Oregonian, September 19, 1857.

The issue was "discussed at great length until a late hour," *ibid.*, after which the delegates concluded that the grand jury system should be retained, at least until a better system could be devised to replace it, although several people mentioned the expense of the grand jury system as a reason for abolishing or changing it. Benefits and drawbacks to the secrecy of grand juries were discussed as well. The convention then considered what number of grand jurors should be chosen. The numbers five, seven, fifteen, twelve, nine, and eighteen were proposed. Mr. Deady, Mr. Olney, and Mr. Williams, all justices of the Supreme Court of the United States for the Territory of Oregon, *see* 1 Or 235 (1857) (identifying justices), who also were delegates to the constitutional convention, actively participated in the discussion and favored retaining the grand jury, although they did not agree on a number.[6] Carey, *supra*, at 213, quoting Oregon Statesman, September 1, 1857.

---

[6] Mr. Williams proposed five, Mr. Olney proposed seven, and Mr. Deady proposed twelve or fifteen.

No specific reason for reducing the number of grand jurors was reported, although the focus of various delegates' remarks on the expense of compensating grand jurors leads us to believe that cost was a significant consideration. Also, all the numbers suggested appear to be the number of grand jurors required to be called — the first blank to be filled in on the proposed article — no mention having been made of the second number, *i.e.* the number of grand jurors who must concur to find an indictment.

Thus, the record of the constitutional debates provides no direct evidence about whether the number discussed was meant to be a quorum requirement to find an indictment. It does, however, provide information pertinent to our inquiry. First, from the active participation of the three territorial supreme court justices, we may presume that the delegates were aware of the grand jury system used in Oregon at that time. Second, from Mr. Logan's comments, it is apparent that the common-law history of the grand jury was known to the delegates. And, finally, from the entire debate it can be inferred that some change in the existing grand jury system was contemplated. We next examine the grand jury as it existed in Oregon at the time of the 1857 constitutional convention.

One of Oregon's earliest laws provided:

"The circuit court shall cause a grand jury to be empaneled at each term, to whom the court shall give a charge; which grand jury shall consist of not less than twelve, nor more than fifteen, and ten of whom may find a bill." Laws of Oregon 1843-49, Act of June 27, 1844, at 99.

That law was changed in the following year, when the legislature decreed that "the number necessary to be summoned for a Grand Jury shall be Twelve and that any ten of them shall concur in an indictment." Laws of Oregon 1845, at 30. The law was changed again in 1849 to provide:

"Sec. 2.    That it shall be the duty of the county commissioners in each of the counties of this Territory, wherein a district court is directed to be held, at least thirty days previous to the sitting of said court, to select *twenty-three persons* * * * [and] to summon the persons so selected as aforesaid, to appear before the said court, at the hour of eleven o'clock A.M., on the first day of the term thereof, to

serve as grand jurors, any *sixteen* of whom shall be sufficient to constitute a grand jury * * *.

"Sec. 3. After the grand jury is empaneled it shall be the duty of the court to appoint a foreman, who shall have power to swear, or affirm, all witnesses to testify before said grand jury, and whose duty it shall be, when the grand jury, or any *twelve* of them, shall find a bill of indictment, to be supported by good and sufficient evidence, to endorse thereon, 'a true bill,' and when they do not find a bill to be supported by sufficient evidence, to endorse thereon 'not a true bill,' and shall, in either case, be signed by the foreman at the foot of the endorsement, and shall, in all cases, where a true bill is returned into court as aforesaid, note thereon the name or names of the witnesses upon whose evidence the same was found." Laws of Oregon (Twenty Acts) 1849-50, at 117. (Emphasis added.)

The law was again amended shortly thereafter to address the problem of when fewer than the required number of grand jurors appeared:

"When of the persons summoned as grand jurors, sixteen or any number over shall attend, they shall constitute the grand jury. If any number less than sixteen shall attend, they shall be placed upon the grand jury, and the court shall order the sheriff to summon from the body of the county a sufficient number of persons to make up the deficiency. * * *." Statutes of Oregon 1854, Act of January 10, 1854, at 169.

The laws were again amended in 1856, in "An Act to conform the Practice of the Courts to the Act of Congress of August 16, 1856," and provided:

"The clerk of the district court, ten days or more before each term, shall issue a venire directed to the marshal requiring him to summon fifteen good and lawful men of the district to serve as grand jurors at that term, twelve of whom shall be a quorum; and such grand jury shall have cognizance of offenses against the laws of the United States and of such criminal cases only under the laws of the Territory, as the court shall submit to them * * *." Laws of Oregon 1856-57, Act of December 10, 1856, at 19.[7]

---

[7] The Act of Congress of August 16, 1856, referred to in the title of this legislation, related to judicial expenses in the states and territories. The only provision in that act referring to grand juries provided for the courts' power to discharge the grand juries. *See* 11 Stat. 50 (1855-59). Thus, it does not appear that

Such was the evolution of grand jury law in Oregon before the constitutional convention. From those laws, we can see that Oregon already had experimented with the number of grand jurors. The statutes had made distinctions between the number of grand jurors summoned, the number required to constitute a quorum, and the number required to find an indictment. Specifically, we note that, quorum requirements were clear from the wording of the statutory text. *See, e.g.*, Laws of Oregon (Twenty Acts) 1848-50, *supra*, at 117 ("select twenty-three persons * * * any sixteen of whom shall be *sufficient to constitute a grand jury * * *[,]* twelve of them, shall find a bill of indictment"); Laws of Oregon 1856-57, *supra*, at 19 ("summon fifteen * * *, twelve of whom shall be a quorum").

We may assume that the delegates to the 1857 constitutional convention came into the debates armed with the knowledge that Oregon had experimented with traditionally large grand juries (up to 23) and with quorum requirements (up to 16) that differed from the number of grand jurors required to find an indictment. We also may assume that there may have been difficulties in getting the required quorum of summoned jurors to appear and participate, as is suggested by, *e.g.*, Statutes of Oregon 1854, *supra*, at 169. From the record of the debates, it may be inferred that some delegates were concerned about the costs of maintaining grand juries. Our review of these materials has revealed nothing that indicates that a quorum of seven grand jurors to find an indictment was intended. On the other hand, the materials do not definitively establish that a quorum of seven was *not* intended.

We next turn to case law from other jurisdictions that interpreted statutory and common law grand jury provisions before 1857, to see if it sheds any light on quorum requirements for grand juries at the time of the Oregon constitutional convention.[8]

---

the changes in the numbers of grand jurors was actually "to conform the practice of the courts to the Act of Congress."

[8] *As noted above, other states had not specified a number of required grand jurors in their constitutions before Oregon did so. Thus, early cases concerning this question were based on statutes and common law.*

Although a full survey of the common law of grand juries is not called for here and, as this court has noted in the past, in any case, "[t]he origin of the grand jury is veiled in obscurity," *State v. Gortmaker, supra,* 295 Or at 510, at English common law, as imported to this country, a grand jury of up to twenty-three was empaneled, of whom twelve could find an indictment. *See* Morse, *A Survey of the Grand Jury,* 10 Or L Rev 101, 115-16 (1931) (tracing origin of 23-person grand jury to the reign of Edward III, 1368); 4 Blackstone Commentaries 302 ("As many as appear upon the panel are sworn upon the grand jury, to the number of twelve at least, and not more than twenty-three, that twelve may be a majority."). In the first half of the nineteenth century, that common law was interpreted variously and modified by the states. *See, e.g.,* Thompson & Merriam, *A Treatise on the Organization, Custody and Conduct of Juries, including Grand Juries,* 646 n 6 (1882) (citing cases from state courts holding that it is not necessary that the entire statutory number of grand jurors should deliberate in every case).

In support of the proposition that all seven grand jurors were meant to comprise a quorum under Article VII (Original), section 18, defendants rely on *Norris' House v. State,* 3 Green 513 (Iowa 1852). In *Norris' House,* a grand jury of fifteen was empaneled as required by statute, but only fourteen grand jurors found the indictment at issue. *Id.* at 514. An Iowa statute required that, "when grand jurors are to be selected, their number must be fifteen, and they shall serve for one entire year thereafter." *Id.* at 515. The statutory scheme provided for replacing absent grand jurors, as well. The Iowa Supreme Court held:

"The legislature have carefully provided for all possible contingencies so as to prevent a reduction from the number required, and to preserve without any encroachment, the number fifteen as fixed by law. This number and this alone unimpaired is absolutely necessary to constitute a grand jury, and hence if this number is in the least diminished, there is no legal grand jury in contemplation of law. If a less number than fifteen is sufficient to form the body, then indeed could the number be reduced, so that even the appearance of a grand jury could not remain. But it is said in reply to this that it is only necessary for twelve to concur in finding a bill, and hence after the grand jury is organized, the court has a right to reduce the number down to twelve. This position is

unsound, and at variance with both the letter and spirit of the law. It is only required that twelve concur in finding a bill, but the other three cannot in any manner be dispensed with." *Id.* at 515-16.

The *Norris' House* case, however, appears to stand alone in that regard.[9] The great majority of court decisions before 1857 addressing the issue whether the number of grand jurors summoned also needed to find the indictment had held that, absent a specific statutory requirement of such a quorum, such was not the case. For example, in *People v. Roberts*, 6 Cal 214, 216 (1856), the Supreme Court of California considered a similar question where the relevant statute provided that "if, of the persons summoned, not less than seventeen nor more than twenty-three attend, they shall constitute the grand jury," and only twelve were required to indict. That court concluded:

> "[W]e are irresistibly led to the conclusion that it was not the intention of the Legislature, that all seventeen of the jury should be actually present in every case. This conclusion is drawn — First: From the provisions already quoted, that the concurrence of twelve shall be necessary. Second: From a provision excluding any individual juror from participation in the deliberations of the body, who is a witness, etc., which in cases of a jury of only seventeen would throw out every indictment. Third: From the rule adopted in other States; and Fourth: From the manifest inconvenience which would arise in every case, where after the empaneling of the jury, one of the number was temporarily absent, from indisposition or other causes." *Ibid.*

Similarly, in *State v. Miller*, 3 Ala 343, 344-45 (1842), where the statute provided that thirteen to eighteen grand jurors be drawn, but only twelve were present to find the indictment, the Supreme Court of Alabama held that the indictment was valid: "we find nothing in the books to authorize the belief that the deliberation of a greater number is to be considered as essential." *See also United States v. Wilson*, 6 McLean 604, 610-11 (7th Cir 1855) (applying Ohio law, where statute required fifteen grand jurors be selected,

---

[9] The Iowa Supreme Court later retreated from that position and held, in *State v. Ostrander*, 18 Iowa 435, 442-45 (1865), that 15 grand jurors need not be present at all times, conceding that the statute did not expressly require it, that it was contrary to the common law, and that it was not the rule of law in any other state.

indictment found by fourteen was valid); *Weeks v. Mississippi*, 31 Miss 490, 498-500 (1856) (where statute required twenty grand jurors be summoned, court found "untenable" the defendant's claim that indictment found by a sixteen-member grand jury was invalid).

In *Commonwealth v. Wood*, 56 Mass (2 Cushing) 150-51 (1848), the court's entire opinion reads:

"It is conceded, that by the common law, a grand jury may consist of thirteen, or of any greater number not exceeding twenty-three. But it is contended, for the defendant, that this rule has been altered by the Rev. Sts. c. 136, § 1, which directs that clerks shall issue writs of *venire facias* for twenty-three grand jurors to be returned, etc. The statute makes no provision relative to the number necessary to form a quorum, but leaves that to the same rule of the common law, by which it was previously regulated; it is merely directory to clerks, in order that the actual attendance of a sufficient number may be better insured."

Thus, it would appear that, although the number of grand jurors required to concur in finding an indictment was not treated flexibly at common law or under the statutes of the various states as of 1857, the greater number of grand jurors to be summoned or empaneled was often treated flexibly and, with the exception of the Iowa case cited and discussed above, was not treated as a quorum requirement to find an indictment, in the absence of specific statutory provisions to that effect.[10]

---

[10] Defendants argue that the size of the petit and grand juries established at the constitutional convention and enacted into the original Oregon Constitution was meant to be firm and not subject to modification by anything less than a constitutional amendment. Defendants point to the fact that in 1972, a new section 9 was added to Article VII (Amended), providing that "Provision may be made by law for [petit] juries consisting of less than 12 but not less than 6 jurors." From that fact, defendants argue that the people realized that the size of the petit juries could not be set at less than twelve unless the constitution specifically grants that authority to the legislature. Defendants conclude that, because there is no parallel amendment to the size of the grand jury established in the original constitution, there is no constitutional authority for the legislature to allow a grand jury to find an indictment if less than seven grand jurors are present and vote.

We reject defendants' argument. Although grand juries and petit juries may be traced to the same ancient sources, they have traditionally fulfilled different functions and have had different requirements since early common law. *See State v. Gortmaker, supra*, 295 Or at 512; Morse, *A Survey of the Grand Jury*, 10 Or L Rev 101, 116-18 (1931) (petit jury was outgrowth of grand jury in late middle ages).

■ For the reasons that follow, we conclude that the framers of the Oregon Constitution in 1857 and the Oregonians who later adopted that constitution did *not* intend Article VII (Original), section 18, to impose a quorum requirement of seven grand jurors to find an indictment. First, in at least one instance where the framers of the Oregon Constitution intended to impose a quorum requirement to do business, it was clear from the text. *See* Or Const, Art IV, § 12 ("Two thirds of each house shall constitute a quorum to do business, but a smaller number may meet; adjourn from day to day, and compel the attendance of absent members."). Second, earlier Oregon laws on grand juries had specifically provided quorum requirements. *See* Laws of Oregon 1856-57, *supra*, at 19 (using the word "quorum"); Laws of Oregon (Twenty Acts) 1948-50, *supra*, at 117. Third, the great majority of the courts that had addressed the issue as of 1857 had concluded that the number of grand jurors required to be summoned or empaneled was not a quorum requirement. *See* cases cited in text, *supra*; Thompson & Merriam, *supra*, at 646.

Those factors, combined with the fact that nothing in the text of Article VII (Original), section 18, or the history of the constitutional debate, indicates that a quorum requirement of seven to find an indictment *was* intended, lead us to conclude that a grand jury in which five or six members are participating may find an indictment, so long as five grand jurors concur in doing so. None of the intervening changes in the grand jury provision suggest any intent to change the number of grand jurors necessary to find an indictment. *See State v. Gortmaker, supra*, 295 Or at 513-14 (summarizing changes); *see also* note 4, *supra* (discussing legislative history of 1974 amendment). Consequently, we conclude that the provision of ORS 132.110(3) allowing "at least five grand jurors to proceed upon good cause shown" does not violate Article VII (Amended), section 5(2), of the Oregon Constitution.

The decision of the Court of Appeals on reconsideration of both cases is reversed. *State v. Conger* is remanded to the Court of Appeals for consideration of defendant's other assignments of error. The judgment of the circuit court in *State v. Daugherty* is affirmed.

**UNIS, J.,** dissenting.

This case concerns the legal structure of a grand jury. The majority holds that a six-person grand jury that hears evidence and returns an indictment satisfies Article VII (Amended), section 5(2), of the Oregon Constitution,[1] which requires that "[a] grand jury *shall consist of seven jurors.*" (Emphasis added.) Because I believe that Article VII (Amended), section 5(2), of the Oregon Constitution means what it says, *i.e.*, that seven jurors must be present when a grand jury hears evidence and returns an indictment, and because the grand jury that indicted defendants consisted of only six jurors, I cannot join in the majority's holding. I, therefore, respectfully dissent.

Article VII (Amended), section 5(2), of the Oregon Constitution provides:

> "A grand jury *shall consist of seven jurors* chosen by lot from the whole number of jurors in attendance at the court, five of whom shall concur to find an indictment." (Emphasis added.)

The text of that provision is plain, unambiguous, and straightforward. The word "shall" expresses a duty, obligation, requirement, or condition precedent. In the context of Article VII (Amended), section 5(2), the word "shall" *requires* that a grand jury consist of *seven* jurors. If the framers of the Oregon Constitution had intended to say that "a grand jury should consist of seven jurors, except when one grand juror is released from his duties in order to go on vacation," they could (and, I think, would) have said so. The word "consist" means "to exist in a permanent or fixed state," "to become composed or made up * * * of." Webster's New International Dictionary 484 (3d ed 1993). In the context of Article VII (Amended), section 5(2), the word "consist" means that what follows is what is required to legally constitute a grand jury. What that constitutional provision requires is seven grand jurors. "Seven" means "being one more than six in number." Webster's New International Dictionary 2079 (3d ed 1993).

---

[1] The parties stipulated that the grand jury that heard the evidence and returned the indictment against defendants consisted of only six grand jurors. One of the grand jurors was released from his duties in order to go on a vacation in Arizona.

I agree, however, that, in interpreting a provision of the Oregon Constitution, it is appropriate to consider the "historical circumstances" that led to its creation and the case law surrounding the provision. *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992). The "historical circumstances" premise by which the majority undertakes to justify its view that Article VII (Amended), section 5(2), of the Oregon Constitution does not require a seven-member grand jury is much too thin to mask the true rationale of the opinion. What I perceive to be the true rationale behind the majority's decision is that it is not practical or convenient to require the attendance of all seven grand jurors in every case. Although that rationale is never stated expressly by the majority, I believe that it is implicit.

Moreover, I find the majority's historical analysis weak and unpersuasive. The majority draws the following conclusions from the debates at the constitutional convention:

> "First, * * * we may presume that the delegates were aware of the grand jury as used in Oregon at that time. Second, * * * it is apparent that the common-law history of the grand jury was known to the delegates. And finally, * * * it can be inferred that some change in the existing grand jury system was contemplated." 319 Or at 496.

The majority interprets Article VII (Amended), section 5(2), in light of the first two conclusions, but ignores the third.

The first historical circumstance that the majority identifies is that the participants in the constitutional convention were aware of the practice of the grand jury in Oregon at the time. The majority summarizes the grand jury practice in Oregon in 1857:

> "We may assume that the delegates to the 1857 constitutional convention came into the debates armed with the knowledge that Oregon had experimented with traditionally large grand juries (up to 23) and with quorum requirements (up to 16) that differed from the number of grand juries required to find an indictment. We may also assume that there may have been difficulties in getting the required quorum of summoned jurors to appear and participate * * *. From the record of the debates, it may be inferred that some delegates were concerned about the costs of maintaining grand juries." 319 Or at 498 (citation omitted).

Thus, at the time of the constitutional convention, the practice in Oregon consisted of the following: (1) large grand juries; (2) grand jury sizes ranging from a maximum number to a minimum number, with a smaller number required to return an indictment; (3) quorum requirements of fewer than the maximum number of grand jurors that were empaneled. As the majority recognizes, the drafters intended some change in the existing practice. Thus, the proposal adopted provided that the number of grand juries was small, there was no range of grand jurors, only a certain number, and there was no quorum requirement consisting of fewer than the number required to constitute a grand jury. Reading the statutory history of grand juries in Oregon as of 1857, in light of the third principle, I reach the opposite conclusion than does the majority. The history indicates that the drafters intended the grand jury to consist of seven grand jurors, and that seven grand jurors must participate for the grand jury to return an indictment.

The second historical circumstance on which the majority relies is the drafters' familiarity with the common law of grand juries.[2] The majority, after reviewing some cases from other jurisdictions based on statutory provisions, summarizes the common law as follows:

"Thus, it would appear that, although the number of grand jurors required to concur in finding an indictment was not treated flexibly at common law or under the statutes of the various states as of 1857, the greater number of grand jurors to be summoned or empaneled was often treated flexibly and, with the exception of [*Norris' House v. State,*

---

[2] The majority's historical analysis, particularly its reliance on specific cases from other jurisdictions regarding the legal structure of a grand jury to demonstrate the drafters' intent, is questionable for at least two reasons. First, the comments of Mr. Logan at the constitutional convention on which the majority relies, 319 Or at 495, were general in nature. Those comments dealt with the history and purpose of the grand jury and were made in the context of a proposal to abolish the grand jury entirely. Mr. Logan's comments can hardly be construed to indicate that the members of the constitutional convention were familiar with the number of grand jurors required in various states. Second, the majority relies on cases decided by other jurisdictions that were decided as late as 1855 and 1856. 319 Or at 498-501. The majority has not demonstrated that members of the constitutional convention had access to or were familiar with decisions of other jurisdictions that were decided shortly before the constitutional convention. Indeed, considering the state of the technology of travel and communications that existed in 1857, the degree of access to such decisions is uncertain.

3 Green 513 (Iowa 1852),][3] was not treated as a quorum requirement to find an indictment, in the absence of specific statutory provisions to that effect." 319 Or at 501.

Thus, the common law indicates the following practice: (1) the number of grand jurors required to return an indictment was not flexible; (2) the maximum number of grand jurors was flexible (*i.e.*, a grand jury could consist of a range of jurors); and (3) the maximum number of jurors was not required to be present for the grand jury to return an indictment. The majority fails to interpret that history in light of its conclusion that "some change in the existing grand jury system was contemplated." 319 Or at 496. Article VII (Amended), section 5(2), represents a change in the common law — rather than provide a range of grand jurors required to constitute a grand jury (with a minimum and maximum number of jurors), the drafters set an established number of grand jurors. Unlike the provisions at issue in the common law cases discussed by the majority, which generally provided that a grand jury would consist of "up to" a maximum number of jurors, the drafters adopted a set number to be both a maximum and a minimum that must be present when a grand jury hears evidence and returns an indictment. This suggests that the common law history of grand juries supports a conclusion that seven grand jurors are required to participate in order to return a valid indictment. The majority's conclusion that the drafters intended to adopt the majority position at common law is, therefore, at odds with its conclusion that the drafters intended to *change* the common law.[4]

---

[3] The majority curiously attempts to minimize the decision in *Norris' House v. State*, 3 Green 513 (Iowa 1852), by stating that in *State v. Ostrander*, 18 Iowa 435 (1865), "[t]he Iowa Supreme Court later retreated from [the position taken in *Norris' House*] and held * * * that 15 grand jurors need not be present at all times." 319 Or at 500 n 9. The *Ostrander* case, which was decided in 1865, is irrelevant in determining the intent of the drafters in 1857.

[4] A comparison of the grand jury with the petit jury demonstrates that the drafters intended a change from the common law. At common law, the petit jury consisted of twelve jurors. *See* Thompson & Merriam, A Treatise on the Organization, Custody and Conduct of Juries, Including Grand Juries 5, § 5 (1882) ("it is clear that the petit jury, according to the common law, consists of neither more nor less than twelve men"). The original Oregon Constitution contained no provision for the number of petit jurors required to constitute a petit jury, presumably because the drafters intended to continue with the established common law practice.

By contrast, the Oregon Constitution does provide for a specific number of grand jurors, different from that required at common law. Thus, it is apparent that the drafters intended to change the legal structure of the grand jury from that at

The majority also relies on Article IV, section 12, of the Oregon Constitution, which provides an explicit quorum requirement for the legislature. The majority concludes that because the drafters knew how to write an express quorum requirement in one part of the constitution, the exclusion of an express quorum requirement for grand juries indicates an intent not to impose a quorum requirement. That argument is unpersuasive. Article IV of the Oregon Constitution is an entire article devoted to the legislature. It initially consisted of thirty-one sections. On the other hand, only one portion of one section of Article VII (Amended) covers grand juries. The inclusion of an express quorum requirement in Article IV, which is much more detailed than Article VII (Amended), section 5(2), should not be read to mean that the drafters intended to permit a quorum of less than seven under Article VII (Amended), section 5(2). Indeed, Article IV, section 12, can be read to support the conclusion that all seven grand jurors be present to return a valid indictment because the drafters, when they intended to provide that a deliberative body could proceed with fewer than all of its members, expressly provided so in the constitution. With regard to grand juries, no such express provision exists.

In sum, the historical circumstances that led to the creation of Article VII (Amended), section 5(2), are ambiguous, at best. The text of Article VII (Amended), section 5(2) — couched in straightforward, unambiguous, and mandatory words of common usage — supports the conclusion that seven grand jurors must be present when a grand jury hears evidence and returns an indictment.

Because the text and the historical circumstances do not provide a sound basis for the majority's conclusion, there must be some other rationale. As stated previously, what I perceive to be the true reasoning behind the majority's decision is that it is not practical or convenient to require the attendance of all seven grand jurors in every case.

I do not share what I perceive to be the majority's view that the meaning of the constitution is to be determined

common law. The majority's reliance on the common law of grand juries is, therefore, unpersuasive.

by what is practical or convenient.[5] Rather than focusing on what is practical or convenient, I would focus on the purpose and nature of the grand jury. Although the origin and development of the grand jury is varied and somewhat obscure, it is clear that at the time of the American Revolution the grand jury was considered an important protection of civil liberty. The grand jury is a deliberative group of citizens that serves as a "protective bulwark standing solidly between the ordinary citizen and an overzealous prosecutor." *United States v. Dionisio*, 410 US 1, 17, 93 S Ct 764, 35 L Ed 2d 67 (1973). *See State v. Gortmaker*, 295 Or 505, 512, 668 P2d 354 (1983) (describing origins of the grand jury). In this regard, the grand jury provides similar citizen involvement and protection as that afforded by a petit jury. The Court of Appeals, in deciding that seven grand jurors must be present to return an indictment, recognized that similarity. The court stated:

> "The express language of Article VII (Amended), section 5(2), requires that a grand jury consist of seven persons, but permits five of them to find an indictment. The genesis and purpose of that nonunanimity requirement is uncertain. However, it appears to have a basis like the requirement that 10 of 12 petit jurors return a verdict in a criminal trial. Or Const, Art I, § 11. That is intended to permit the expression and consideration of minority viewpoints but, through the nonunanimity requirement, precludes a minority from thwarting an otherwise justifiable indictment.

> "If a grand or petit jury proceeds with fewer than the requisite number of members, the balanced view that the deliberative process promotes may not be achieved. A person omitted from a panel may have been able to express a viewpoint that would have persuaded the other members of the jury to a particular position or to evaluate a critical part of a case with more scrutiny. We cannot say that a grand jury panel of five or six jurors would always reach the same conclusion as if there had been seven members in attendance.

---

[5] Nor do I agree that it is, in fact, impractical to proceed with seven grand jurors. Since *Goodwin v. State of Oregon*, 116 Or App 279, 840 P2d 1372 (1992), the law of this state has been that all seven grand jurors must be present to return a valid indictment. The grand jury system has not been impossibly overburdened or come grinding to a halt under the pressure of requiring seven grand jurors to be present in furtherance of the mandate of Article VII (Amended), section 5(2), of the Oregon Constitution.

"By requiring that 12 petit jurors hear all of the evidence, Article I, section 11, promotes a deliberative process that permits expression and consideration of minority viewpoints, thereby insulating an accused from biased or overzealous prosecution. That right is a significant right that a defendant must affirmatively waive. Because Article VII (amended), section 5(2), promotes the same deliberative process at the grand jury level, it is also a significant right. Consequently, we conclude that it mandates that seven grand jurors hear and consider all of the evidence presented before a valid indictment can be found." *Goodwin v. State of Oregon*, 116 Or App 279, 282-83, 840 P2d 1372 (1992) (footnote and citations omitted).

I find that analysis persuasive.

In sum, the text of Article VII (Amended), section 5(2), the history of that provision, the purpose intended to be served by the grand jury, and the deliberative nature of the grand jury all lead me to the conclusion that the Oregon Constitution requires that all seven grand jurors participate in order to return a valid indictment. I respectfully dissent.

Fadeley, J., joins in this dissenting opinion.